**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BLUE ROCK INVESTMENTS, LLC, et al., | : | Case No. 3:17-cv-00409 |
| | : | |
| | : | District Judge Walter H. Rice |
| Plaintiffs, | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| vs. | : | |
| | : | |
| CITY OF XENIA, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

The Complaint in the present case alleges that Plaintiff Blue Rock Investments,

LLC leases the Towne Square Shopping Center from the City of Xenia, Ohio; the City

owns title to the parcel of land on which the Shopping Center sits; and Blue Rock owns

several commercial buildings that make up the Shopping Center, including the Fulmer's

Building.  (Doc. #1, ¶s 25-33).  Sometime in late 2016 or January 2017, the City

contracted with Badger Construction Co., Inc. to demolish the building next door to the

Fulmer's Building as part of a shopping-center redevelopment.  *See* Doc. #10, ¶53; Doc.

#26, ¶17.  Blue Rock and another Plaintiff—Boymel Family, LLC—allege that the

demolition damaged the Fulmer's Building's foundation, compromised its structural

integrity, and left behind giant holes in a wall that exposed its interior to mother nature's

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

ire.  Burst water pipes and damage to the Fulmer's building's fire-suppression system followed, according to Plaintiffs' Complaint.

Plaintiffs assert that the City has continuously refused to fix—or pay for repairs to—the Fulmer's Building, and that the building remains exposed to the elements and structurally unsound.  Plaintiffs allege that the City wants to demolish the Fulmer's Building, rather than repair it, so the shopping-center redevelopment can move forward. And Plaintiffs report that the City attempted to coerce them into selling their interest in the Fulmer's Building initially by threatening, later by citing, them with maintenance-code and fire-code violations—which the City itself caused—and by extending to Plaintiffs a "low-ball" offer to buy the Fulmer's Building.

Plaintiffs bring the present case against the City under 42 U.S.C. § 1983 claiming that it violated their rights under the First Amendment (retaliation), Fourth Amendment (unreasonable seizure of property), and Fourteenth Amendment (substantive due process).  They also advance two state-law claims against the City: breach of contract–quiet enjoyment, and negligence.  They do not assert a freestanding claim that the City has denied it just compensation for a taking in violation of the Fifth and Fourteenth Amendments' Takings Clause.

The case is presently pending on the City's Motion for Partial Judgment on the Pleadings and the parties' related Memoranda.  (Doc. #s 31, 32, 34, 39).

## II.    Motions for Judgment on the Pleadings

The City's Rule 12(c) Motion requires the Court to "'construe the Plaintiffs' complaint in the light most favorable to them, and accept the complaint's allegations as

true, drawing all reasonable inferences in favor of the Plaintiffs.'" *Bullington v. Bedford County*, 905 F.3d 467, 469 (C.A.6 (Tenn.), 2018) (citations omitted). The Complaint's factual allegations "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting, in part, *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009)). "'[A] legal conclusion couched as a factual allegation' need not be accepted as true…, nor are recitations of the elements of a cause of action sufficient." *Id.* (citations omitted).

A Rule 12(c) "motion may be granted only if the moving party is … clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). A party is clearly entitled to judgment under Rule 12(c) "if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim." *Mayrides v. Delaware County Comm'rs*, 666 F.Supp.2d 861, 866 (S.D. Ohio 2009) (Marbley, D.J.) (citation omitted).

## III.    Plaintiffs' Federal Claims Against The City

### A.    <u>42 U.S.C. § 1983</u>

To state a § 1983 claim—as Plaintiffs strive to do—their Complaint must plausibly allege that a person under color of state law deprived them "of a right secured by the Constitution or laws of the United States." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.

2006)). The City is considered a "person" under § 1983 and is therefore exposed to potential § 1983 liability. *See Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997).

"[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citations omitted); *see Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights.").

### B. Counts One and Two

Plaintiffs claim in Count One that the City violated their right to petition the government for redress of grievances by retaliating against them because they engaged in two activities the First Amendment protects. Plaintiffs' first protected activity occurred when they asked the City to redress the damage it had caused to the Fulmer's Building. (Doc. #1, ¶95). Plaintiffs' second protected activity occurred when they refused to accept the City's offer to buy the Fulmer's Building at a distressed price. *Id*.

The City allegedly retaliated against Plaintiffs for these protected activities by invoking and abusing its "Code Enforcement process to issue the Notice of violation for issues the City itself caused." *Id*. at ¶96. Plaintiffs claim, "The City's retaliatory actions against Blue Rock would, in their totality, ordinarily chill or deter someone from exercising one's First Amendment right of access to petition the government for the redress of grievances." *Id*. at ¶97.

In Count Two, Plaintiffs advance a substantive-due-process claim based on the

theory that the City arbitrarily and capriciously damaged the Fulmer's Building, refused to repair it, attempted to buy it at a "low-ball" price, and issued a retaliatory notice of code violations to Plaintiffs only after they refused the City's low-ball bid to buy the Fulmer's Building. Plaintiffs explain that they have unsuccessfully appealed the retaliatory citations to the Board of Zoning Appeals. *Id.* at ¶s 91-92. And, Plaintiffs allege, "The City's action was not only a coercive tactic but was also a misuse of the City's Enforcement powers. The City's acts have been arbitrary, capricious, willful, and without regard to the facts and circumstances of this case." *Id.* at ¶103(g)-(h). Plaintiffs' substantive-due-process claims rests on the principle that "a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren,* 411 F.3d at 707; *see Keymarket of Ohio, LLC v. Keller*, 2013 WL 6000922, at *8 (S.D. Ohio 2013).

The City contends that Plaintiffs' Counts One and Two are not ripe because the claims are, in reality, a restyled Fifth Amendment takings claim subject to the mandate of *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108 (1985), which describes how a Fifth Amendment regulatory takings claim becomes ripe for federal judicial review. More on *Williamson* follows.

### C. The Fifth Amendment and Ripeness

"The Fifth Amendment's Takings Clause prohibits appropriation of private property for public use only where just compensation is not paid." *Peters v. Fair*, 427 F.3d 1035, 1037 (6th Cir. 2005) (citations omitted); *see Chicago Burlington & Quincy R.R. Co. v. Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581 (1897) (holding that the Takings

5

Clause applies to the states). "Any takings claim is not ripe until plaintiffs have sought just compensation by available state procedure." *Peters*, 427 F.3d at 1037 (citing *Williamson,* 473 U.S. at 194, 105 S.Ct. 3108).

"The Takings Clause's purpose is 'not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking.' Consequently, 'a State does not violate the Takings Clause 'until it refuses to compensate the owner.'" *Wayside Church v. Van Buren County*, 847 F.3d 812, 817 (6th Cir. 2017) (citations omitted) (italics in original); *see Williamson*, 473 U.S. at 194-95 (Fifth Amendment does not proscribe taking; "it proscribes taking without just compensation."). A plaintiff "satisfies its duty to seek just compensation by pursuing 'reasonable, certain, and adequate procedures' for obtaining compensation." *Coles v. Granville*, 448 F.3d 853, 861 (6th Cir. 2006) (quoting, in part, *Williamson*, 473 U.S. at 194) (other citation omitted).

Ohio's mandamus proceeding constitutes a reasonable, certain, and adequate procedure by which a potential-takings plaintiff may seek just compensation. "Over the last ten years Ohio courts, including the Ohio Supreme Court, have consistently recognized mandamus as the vehicle with which to contest an involuntary taking, no matter whether that taking is a regulatory or a physical one, and no matter whether the public actor is a state or local entity." *Coles*, 448 F.3d at 865; *see Cornerstone Developers, Ltd. v. Sugarcreek Township*, 3:15cv93, 2015 WL 6472260, at *4 (S.D. Ohio 2015) (Rice, D.J.).

The City argues that Plaintiffs' retaliation and substantive-due-process claims are

ancillary to their restyled takings claim or constitute an implied takings claim. According to the City, if either argument is correct, Plaintiffs' takings claim predominates, is unripe, and bounces their search for just compensation into state court under *Williamson*.

Plaintiffs argue that ripeness is not an issue here because they do not bring a freestanding or implied Fifth Amendment takings claim, and their substantive due process and retaliation claims cannot be ancillary to a takings claim they do not bring.

Although Plaintiffs are correct to point out that their Complaint does not allege a freestanding takings claim, they face the problem that "it is not clear why the concept of substantive due process should have any place in takings cases…." *Montgomery v. Carter County, Tenn.*, 226 F.3d 758, 769 (6th Cir. 2000).

> Because of the highly destructive potential of overextending substantive due process protection, *see, e.g., Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (explaining the dangers), and because the doctrine's borders are so undefined, the Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff.

*Id*.; *see Warren*, 411 F.3d at 706–07 (6th Cir. 2005) ("Supreme Court authority subsequent to *Williamson* … strongly stresses that substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff."). From Plaintiffs' viewpoint, the problem of mixing substantive-due-process claims into takings cases is presently insignificant because this is not a takings case. Plaintiffs are incorrect.

"The takings clause itself addresses whether and under what circumstances the government may take an individual's private property, which is why a number of other

7

circuits have concluded that no room is left for the concept of substantive due process."
*Montgomery*, 226 F.3d at 769; *cf. Warren*, 411 F.3d at 707 ("We therefore decline to
endorse a substantive due process theory based on a claim that erection of the barriers
amounted to an unconstitutional taking of property.").  There is wiggle room here
because the Sixth Circuit declined to hold in *Montgomery* that it was joining the "number
of circuits" finding, in the Takings-Clause context, "no room … left for the concept of
substantive due process."  *Id.*  The Sixth Circuit did, however, draw one line in the sand:
"whatever the applicability of the concepts of procedural and substantive due process to
takings claims, we agree that those concepts may not be used in order to mount an end
run around the ripeness requirement of *Williamson* …."  *Id.*

The possibility of an end run around *Williamson's* ripeness requirement is one of
several pertinent factors to consider when determining whether Plaintiffs' substantive due
process claim is a "truly independent claim" or is ancillary to a takings claim.  Two
remaining factors are whether the substantive due process claim (1) stems from an
immediate and concrete injury, or (2) arises from the same nucleus of facts as the takings
claim.  *Monfort Supply Co. v. Hamilton County Bd. of Zoning Appeals*, 1:04cv145, 2006
WL 3692533, at *8 (S.D. Ohio 2006) (Watson, D.J.) (and cases cited therein); *cf. Buckles
v. Columbus Municipal Airport Authority*, 90 F. App'x 927, 931 (6th Cir. 2004) ("a
substantive due process claim that merely restates the more specific claim will not lie.");
*Choate's Air Conditioning & Heating Inc. v. Light, Gas, Water Division of City of
Memphis*, 16 F. App'x 323, 330 (6th Cir. 2001) ("Choate's has merely repackaged a
takings claim as a substantive due process violation for purposes of filing a § 1983 action

in federal court.").

Returning to Plaintiffs' Complaint, while it is true that they do not advance a freestanding Takings-Clause claim, their Complaint describes physical intrusions upon and into the Fulmer's Building when the City's demolition left holes in an exterior wall leading to additional damage to the interior fire-suppression system and burst water pipes. Plaintiffs, moreover, base their substantive-due-process claim on the allegation that "the City's demolition of the [neighboring] building compromised the foundational and structural integrity of, and damaged the Fulmer's Building." (Doc. #1, ¶103(b)). The Complaint further alleges that the City's (Badger Construction's) demolition of the building next door to the Fulmer's Building was part of the City's plan "to convert Xenia Towne Square Shopping Center into an 'urban, mixed-use plan' where the current shopping center would be chopped up into small squares by new city streets." (Doc. #1, ¶4). Plaintiffs continue, "The Fulmer's Building sits squarely in the path of one of the City anticipated streets, such that a substantial portion—if not all of the Fulmer's Building—will have to be demolished and re-constructed to make way for a new road. The City has in fact commissioned architectural designs that call for the demolition and re-design of the Fulmer's Building." *Id*. at ¶5. While these re-development efforts have not yet been fully realized (the Fulmer Building is apparently still standing), the City's next-door demolition and resulting damage to the Fulmer's Building took place in what presents as a prototypical Fifth-Amendment-takings scenario—a municipality taking private property for the public use as a redeveloped shopping center. Consequently, if the

9

Complaint stopped here, Plaintiffs' substantive-due-process claim would be a rather obvious effort to avoid *Williamson* and the availability of Ohio's mandamus action. *See Coles*, 448 F.3d at 865; *see Cornerstone Developers*, 3:15cv93, 2015 WL 6472260, at *4. But the Complaint does not stop here.

The Complaint continues forward in time to describe the City's alleged post-demolition conduct that Plaintiffs say was coercive, arbitrary, and capricious. Plaintiffs contend that their substantive-due-process claim is not ancillary to a takings claim because it "did not arise until the City employed coercive tactics and misused its enforcement powers to compel Blue Rock to sell the Fulmer's Building at a distressed price. It does not arise from the City's negligent demolition of the Fulmer's Building or the 'Takings Clause.'" (Doc. #34, *PageID* #596).

Plaintiffs' substantive-due-process claim is not truly independent from a Takings-Clause claim. Both claims arise from same nucleus of operative facts—the City's (through Badger Construction) demolition of the building next to the Fulmer's Building and the resulting damage to the Fulmer's Building. The City's alleged post-demolition conduct would not—indeed, could not—have occurred without the demolition and resulting damage to the Fulmer's Building. Without these operative events, Plaintiffs would not have needed to ask the City to repair the damage it had caused, and the City would have lacked an opportunity to refuse to repair, or pay for the repairs, of the Fulmer's Building. Without these events, the City would not have had the opportunity to misuse its enforcement power by threatening Plaintiffs with the code violations and by charging Blue Rock with code violations that the City had caused. And, without these

events—particularly the damage the City caused to the Fulmer's Building—the City would not have had the opportunity to make its low-ball, distressed-price offer to buy the damaged Fulmer's Building.

Similarly, Plaintiffs' First Amendment retaliation claim is based on the same nucleus of operative facts as a takings claim. Without the demolition and damage to the Fulmer Building, Plaintiffs would not have engaged in the protected activities described in the Complaint. There would have been no need for them to ask (petition) the City to repair the post-demolition damage and no opportunity for Plaintiffs to reject the City's low-ball, distressed-price offer to buy the Fulmer's Building. The City's alleged retaliatory acts—e.g., abuse of its code-enforcement authority—likewise could not have occurred without the demolition and resulting damage that led to the Fulmer's Building's code violations.

Plaintiffs, moreover, have not alleged an independent harm in support of their substantive-due-process claim or retaliation claims. Instead, they generally allege, "Blue Rock has suffered and will continue to suffer the deprivation of their vested rights under the United States Constitution." (Doc. #1, ¶s 101, 104). Plaintiffs explain that they are not seeking just compensation in this case; they seek an Order compelling the city to stop its coercive conduct and placing "Blue Rock in the same position that it would have been [in] had the City's wrongful behavior not occurred." *Id*. at 597. The Complaint, however, does not bear out these distinctions. Plaintiffs' Prayer for Relief seeks "compensatory … damages…," thereby pointing at monetary relief or "just compensation," as the Fifth Amendment says. (Doc. #1, *PageID* #23).

More significantly, placing Blue Rock in the same position as it would have occupied absent the City's alleged misconduct leads to the same remedy under a substantive-due-process theory or a Takings-Clause theory. Under each theory, Plaintiffs would be made whole by the cost of restoring the Fulmer's Building to its pre-demolition value. *See Pembaur v. City of Cincinnati*, 745 F.Supp. 446, 455 (S.D. Ohio 1990) ("compensatory damages—'damages grounded in determinations of plaintiffs' actual losses'—are the mechanism by which constitutional deprivations are redressed."); *see also Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 270-71 (11th Cir. 1987) ("It is well settled that in determining the compensation due for a taking, 'the question is, What has the owner lost?'" (quoting, in part, *Boston Chamber of Commerce v. City of Boston,* 217 U.S. 189, 195, 30 S.Ct. 459, 460 (1910))).

In addition to same nucleus of operative facts, Plaintiffs' retaliation and substantive-due-process claims attempt to mount an end run around *Williamson's* ripeness requirement. This is seen in the absence of a Takings-Clause claim from the Complaint that, as observed above, alleges a prototypical Fifth-Amendment-takings scenario—a municipality taking private property for the public use as a redeveloped shopping center. This conclusion is bolstered by the Complaint's post-demolition allegation that the City proposes to demolish the Fulmer Building. (Doc. #1, *PageID* #14). Accepting this as true explains why the City allegedly does not want to repair the Fulmer's Building, why it allegedly attempted to buy the Fulmer's Building at a distressed price, and why it has allegedly engaged in coercive conduct to achieve its redevelopment goals. And, assuming the City wants to demolish the Fulmer's Building

as part of its shopping-center redevelopment, the Complaint's demolition, damage, and post-demolition allegations fit squarely under the Fifth Amendment takings clause. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539, 125 S.Ct. 2074, 2082 (2005) (""The Court has held that physical takings require compensation because of the unique burden they impose: A permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using her property-perhaps the most fundamental of all property interests."); *Waste Management, Inc. of Tennessee v. Metropolitan Government of Nashville and Davidson County*, 130 F.3d 731, 737 (6th Cir. 1997) ("A physical taking … occurs where the government physically intrudes upon a plaintiff's property…."); *see also Warren*, 411 F.3d at 705 ("the Warrens have never contended that the City placed its barriers or otherwise physically encroached *on their property*. Such an allegation would have been a physical takings claim." (emphasis in original)); *Center for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F.Supp.3d 639, 654 (S.D. Ohio 2016) (Graham, D.J.) ("A physical taking occurs when 'the government physically intrudes upon a plaintiff's property'" (citation omitted)).

For all the above reasons, Plaintiffs' First Amendment retaliation and substantive-due-process claims are not ripe. They are ancillary to a repackaged Fifth Amendment takings claim and must therefore be litigated in the Ohio courts through a mandamus proceeding. *See Coles*, 448 F.3d at 865 (finding takings claim not yet ripe for federal review under *Williamson*); *see also Peters*, 427 F.3d at 1037 ( "claims for violations of substantive due process and procedural due process claims ancillary to a takings claim

are … subject to this [*Williamson's*] ripeness requirement."); *Montgomery*, 226 F.3d at 769 (substantive-due-process claim "may not be used to avoid *Williamson's* ripeness requirement); *Choate's*, 16 F. App'x at 330 ("Choate's has merely repackaged a takings claim as a substantive due process violation for purposes of filing a § 1983 action in federal court.").[2]

Accordingly, the City's Motion for Judgment on The Pleadings is well taken as to Counts One and Two.

### D.   Count Three

Plaintiffs claim in Count Three of their Complaint that their possessory interest in the Fulmer's Building has been unlawfully seized in violation of the Fourth and Fourteenth Amendments.

The Fourth, through the Fourteenth, Amendment, "provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 543 (1992). "A 'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property." *Id*. at 61, 113 S.Ct. 538 (citation omitted).

The City contends that Plaintiffs lack standing to litigate whether the City seized

---

[2] Plaintiff points out that *Choate's* "distinguished the plaintiff's takings claim from an 'arbitrary and capricious substantive due process claim.'" (Doc. #34, *PageID* #596). This distinction does not help Plaintiffs here because the Court of Appeals in *Choate's* found that the plaintiff's "effort to analogize his case to the zoning context and argue that it has an arbitrary and capricious substantive due process claim is unavailing." 16 F. App'x at 331. Additionally, *Choate's* is cited here to support the proposition that a takings claim repackaged as a substantive-due-process claim is subject to *Williamson's* ripeness requirement.

the Fulmer's Building in violation of the Fourth Amendment. To support this contention, the City focuses on Plaintiffs' negligence allegation—specifically, Plaintiffs' allegation that when the building next to the Fulmer's Building "'was demolished…, the City and/or its agents *failed to perform the demolition in a workmanlike manner* such that the City's demolition undermined the Fulmer's Building's foundation and left holes in the Fulmer's Building's exterior wall.'" (Doc. #31, *PageID* #570 (emphasis by the City) (quoting, in part, Doc. #1, ¶7)). The City maintains that the duty to perform in a workmanlike manner came from its contract with Badger Construction to which Plaintiffs were not a party. The City argues that Plaintiffs cannot fairly trace their alleged Fourth-Amendment injury to a contract they were not a party to. The City alternatively argues that Plaintiffs' workmanlike-manner allegation substantially constitutes a negligence claim and thus falls short of a § 1983 violation. *Cf. Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) ("successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights…, such that mere negligence or recklessness is insufficient." (internal citation omitted)).

The City's focus on the contractual duty imposed by its contract with Badger Construction and Plaintiffs' descriptions of the City's negligence overlooks some of Plaintiffs' allegations concerning the City's pre- and post-demolition conduct. Doing so, the City's arguments construe Plaintiffs' Complaint in the light most favorable to the City–a mistaken approach under Rule 12(c). *Bullington*, 905 F.3d at 469. Even if the City's is not making this Rule 12(c) mistake, the City's contentions fail to draw "'all reasonable inferences in favor of the Plaintiffs.'" *Id.* (citation omitted). Consequently,

even if the City is correct that to conclude that Plaintiffs' Fourth-Amendment claim rests on the City's purported breach of a contractual duty to perform in a workmanlike manner or otherwise identifies merely negligent conduct by the City, the Complaint advances other facts that must be construed in Plaintiffs' favor. Doing so, these other facts raise a reasonable inference that the City intentionally and "meaningfully interfered" with Plaintiffs' possessory interest in the Fulmer's Building in violation of the Fourth Amendment.

The other facts Plaintiffs allege concern the City's pre-demolition and post-demolition knowledge and conduct. The City's meaningful interference began, according to the Complaint, in the fact that the City knew before the demolition that the Fulmer's Building would need protection from damage. Plaintiffs assert, "as was obvious at the time, the [neighboring] building and the Fulmer's Building were tied to one another. The top of the [neighboring] building's east wall was flashed into the top of the Fulmer's Building's west wall, and, at both the front and rear of the structures, there was not an evident gap between the two buildings." (Doc. #6, ¶36).

Plaintiffs allege that when the City solicited bids for the demolition project, it informed potential bidders, "upon the demolition's completion, the site should be graded in a manner to ensure that any areas along the exterior of any building would contain at least ten feet of sloped fill to prevent undermining of the building's footings…." *Id.* at ¶56. This reasonably shows that the City knew the demolition project would involve work to prevent damage to the Fulmer's Building.

Additionally, two bids submitted to the City by architectural firms, one from

Pinnacle Architects and one from Porter Levin Architects, "expressly warned of the likely damage demolition of the [neighboring] building would cause to the west wall of the Fulmer's Building." *Id.* at ¶38. The Complaint explains in greater detail the specific warnings and explanations Pinnacle Architects and Levin Porter provided the City. *See id.* at ¶s 39-44.

If this were not enough to raise a reasonable inference about the City's knowledge, The Complaint continues, "The City knew prior to the … demolition that the Fulmer's Building would likely be damaged." (Doc. #1, *PageID* #8 (bold and capitalization omitted)). They support this allegation with information about what the City knew a year before the demolition (which occurred "[s]ometime in January 2017," *id.* at ¶65). The City gained this information from architectural bids and inspections:

> On or about January 14, 2016, after receiving the bids from Pinnacle and Levin Ports, the City informed Blue Rock that 'our architect needs to inspect the inside west all of the Fulmer[']s Building to help him assess existing conditions and determine how best to protect the west wall of the Fulmer's Building during this demolition.'
>
> The City's architect inspected the buildings five days later ….
>
> During the inspection, Levin Porter determined that the west wall of the Fulmer's Building was not designed to be a free-standing wall. This meant that when the [demolition occurred]…, at a minimum, the newly exposed Fulmer's wall would need a protective coating.

(Doc. #1, ¶46).

As to the demolition itself, Plaintiffs assert that "the City failed to ever provide notice to Blue Rock of the dates that the actual demolition would occur. Nor did the City provide Blue Rock notice that the demolition had taken place after-the-fact…." *Id.* at 68.

The Complaint also describes a series of intentional post-demolition acts by the City that, if true, show the City meaningfully interfered with Plaintiffs' ability to use the Fulmer's Building.  Here, under the heading of Plaintiffs' Count III, the Complaint's central refrain returns: "The City's demolition of the [neighboring] building damaged the exterior wall of the Fulmer's Building by compromising its foundation and structural integrity and also caused damage to the interior of the Fulmer's Building."  (Doc. #1, ¶107).  Similarly, Count III points to the City's alleged refusal to make repairs to the Fulmer's Building's west wall, and Plaintiffs maintain, "These acts by the City have deprived Blue Rock of its right to use the Fulmer's Building."  *Id*. at ¶109.

In light of the above, and contrary to the City's focus on Plaintiffs' allegations about the City's contractual obligation to perform the demolition in a workmanlike manner, the Complaint reasonably and fairly traces Plaintiffs' alleged Fourth-Amendment injury—the City's meaningful interference with Plaintiffs' possessory interest in the Fulmer's Building—to the City's intentional and knowing conduct before and after the demolition.  Indeed, the City's intentional and knowing conduct advances more than a mere negligence claim or a claim based on the City's contract with Badger Construction; it supports a plausible claim that the City was the moving force behind Plaintiffs' Fourth-Amendment injury.  *See, generally, Graham*, 473 U.S. at 166, 105 S.Ct. at 3105 ("[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation.").  And, it does not matter that the Complaint contains allegations that also accuse the City of negligent conduct because Plaintiffs are allowed to plead in the alternative or inconsistently.  *See* Fed. R. Civ. P. 8(d)(2)-(3).

The City relies in its Reply on *Wilson v. Elliott Cty., Ky.*, 198 F. App'x 471, 473-74 (6th Cir. 2006) where the Sixth Circuit affirmed a dismissal without prejudice of a plaintiffs' claims asserting "a violation of the Fourth and Fifth Amendment rights for the taking of his real property without due process and without just compensation (Counts II and III) under 42 U.S.C. § 1983." *Wilson*, however, does not support dismissal of Plaintiffs' independent Fourth-Amendment—non-takings—claim, In *Wilson*, the plaintiff's independent claim in Count I "alleged a violation of his Fourth Amendment rights for the warrantless taking of personal property." *Id*. at 473. This claim survived; it was not dismissed like Counts II and III for lack of ripeness.

Accordingly, the City's Motion for Judgment on the pleadings lacks merit as to Plaintiffs' Count Three.

## IV. Plaintiff's Negligence Claim—Count V

Plaintiffs' negligence claim in Count V rests on allegations that (1) the City owed a duty to Blue Rock to exercise reasonable care in the demolition of the building next to the Fulmer's Building; (2) the City breached its duty by negligently failing "to exercise reasonable care in contracting, managing, and p[er]forming the demolition …"; and (3) as a direct and proximate cause of the City's breaches, the Fulmer's Building suffered a myriad of costly structural, foundational, and other damage.

The City contends that the immunity extended to political subdivisions under Ohio statutory law shields it from liability for any negligence Badger Construction committed in connection to the demolition project.

Under Ohio law, a three-tier analysis determines whether a political subdivision is immune from liability for tort claims. *Range v. Douglas,* 763 F.3d 573, 582 (6th Cir. 2014) (citing *Lambert v. Clancy,* 125 Ohio St.3d 231 (2010)). "Under Tier 1, political subdivisions and their employees receive a general grant of immunity for acts in connection with a government function." *Id.* at 583-83 (citing *Lambert,* 125 Ohio St.3d 231, 927 N.E.2d at 588; Ohio Rev. Code § 2744.02(A)(1)). This Tier 1 immunity also extends to a political subdivision acting in a proprietary function. *See* Ohio Rev. Code § 2744.02(A)(1).

Tier 2 lists exceptions to this immunity. See *Range,* 763 F.3d at 582 (citing Ohio Rev. Code § 27744.02(B)). "If an exception applies, Tier 3 considers if immunity is reinstated under any of the defense provisions in Ohio Revised Code § 2744.03." *Id.* (citation omitted).

Plaintiffs' Complaint and Memorandum in Opposition point to the landlord-tenant relationship between the City and Blue Rock and asserts, "At all relevant times, the City was p[er]forming a proprietary function within its corporate powers by leasing its property to Blue Rock for consideration. Accordingly, the City is not immune for liability for its negligence." *Id*. at ¶s 126-28 (citation omitted).

The City contends that none of the Tier-2 exceptions applies to eliminate its immunity under Ohio Rev. Code. § 2744.02(A)(1). The City reasons that the only possible exception at Tier 2 is its potential liability for acts of its "employees" performing proprietary functions. But, according to the City, this possibility is not realized because Badger Construction was not a City "employee"; it was an independent contractor.

The Tier-2 exception upon which the City relies states: "political subdivisions are liable for…, loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Ohio Rev. Code § 2744.02(B)(2). The statutory definition of the term "employee" "does not include an independent contractor." Ohio Rev. Code § 2744.01(B).

The Complaint does not specifically describe, or mention, Badger Construction. On its face, then, it does not illuminate Badger Construction's status as either an employee or an independent contractor. Yet, Plaintiffs do not respond to the City's contention that Badger Construction was an independent contractor, not an employee. Consequently, there presently appears to be no disagreement between Plaintiffs and the City over Badger Construction's role an independent contractor in connection with the demolition project. Based on this, and assuming the City was engaged in proprietary acts when it, the City cannot be liable for Badger Construction's purportedly negligent acts in connection with the demolition under Ohio Rev. Code § 2744.02(B)(2). Because Badger Construction's status was that of an independent contractor, rather than an employee, the immunity exception in § 2744.02(B)(2) for negligent acts of the City's employees does not apply to Badger Construction. *See Collias v. Redburn*, 2012-Ohio- 2128, ¶ 17, 2012 WL 1664117, at *4 (Ohio App. 2012).

But what about Plaintiffs' allegations that the City was negligent in contracting with Badger Construction in the first place and was negligent in managing the demolition project? Such conduct by the City refers to the City's acts, not acts by Badger Construction—in other words, the City's negligence not Badger Construction's

negligence. If so, Badger Construction's status as an independent contractor would not ameliorate the City's own purported negligence. *Cf. Weldon v. Prairie Twp*., 2010-Ohio-5562, ¶ 13, 2010 WL 4632553, at *4 (Ohio App. 2010) (political subdivision retains immunity when "liability sought to be imposed was performed by an independent contractor…., and there is no evidence that the political subdivision exercised control over the political subdivision's acts.").

The City also argues that its acts in redeveloping the shopping center meet the definition of "governmental functions," including "the enforcement or nonperformance of any law;… The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement;… Urban renewal projects and the elimination of slum conditions…." Ohio Rev. Code. § 2744.01(i), (l), (q). Plaintiffs do not specifically respond to this. They instead argue that the City engaged in proprietary activities by leasing the property to Blue Rock. This argument, however, does not help Plaintiffs. Assuming the City was engaged in proprietary activities as when acting as a lessor, it retains its immunity for the damage to the Fulmer's Building caused by the purported negligence of its independent contractor, Badger Construction. *Cf. Weldon*, 2010-Ohio-5562, ¶ 13, 2010 WL 4632553, at *4.

Plaintiffs lastly argue that the City can be liable for Badger Construction's negligence because, as a matter of law, the demolition of the Fulmer's Building was an inherently dangerous activity. Plaintiffs are correct to recognize that "the act of razing a building is inherently dangerous …." *Trotwood v. S. Cent. Constr., L.L.C*., 192 Ohio App.3d 69, 81 (2011). And, Ohio law imposes nondelegable duties on "the employer that

arise out of the work itself because its performance creates dangers to others, *i.e.*, inherently dangerous work." *Pusey v. Bator*, 94 Ohio St.3d 275, 279 (2002).  Employers in Ohio, therefore, may not escape liability for negligent acts of their independent contractor performing an inherently dangerous activity.  *See id.*

Yet, when the employer, like the City, is a political subdivision entitled to statutory immunity under Ohio Rev. Code § 2744.02, such immunity is not defeated on the ground that the independent contractor performed a nondelegable duty, such as demolishing a building.  *See Trotwood*, 192 Ohio App.3d at 83 ("Nothing in [Ohio Rev. Code] Chapter 2744 creates an exception when an independent contractor performs a nondelegable duty." (footnote omitted)).

Accordingly, the City's Motion for Judgment on the pleadings is well taken as to Plaintiffs' Count V.

## V.     Punitive Damages

Plaintiffs have withdrawn their request for punitive damages against the City on its claims under 42 U.S.C. § 1983 and Ohio law.  (Doc. #34, *PageID* #605).

### IT IS THEREFORE RECOMMENDED THAT:

1.    The City of Xenia's Motion for Judgment on the Pleadings (Doc. #31) be GRANTED and Plaintiffs' Counts I, II, and V be dismissed because they are not ripe; and

2.    The City of Xenia's Motion for Judgment on the Pleadings (Doc. #31) be DENIED in remaining part.

December 10, 2018                          *s/Sharon L. Ovington*
                                                          Sharon L. Ovington
                                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).