IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BLUE ROCK INVESTMENTS,
LLC, *et al.*,

     Plaintiffs,

     v.

CITY OF XENIA, OHIO,

     Defendant/Third Party
     Plaintiff,

     v.

BADGER CONSTRUCTION CO.,
INC.,

     Third-Party Defendant

:

:

:

Case No. 3:17-cv-409

JUDGE WALTER H. RICE

---

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN
PART UNITED STATES MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATIONS (DOC. #49); SUSTAINING IN PART AND
OVERRULING IN PART DEFENDANT CITY OF XENIA'S
OBJECTIONS THERETO (DOC. #51); SUSTAINING IN PART AND
OVERRULING IN PART PLAINTIFFS' OBJECTIONS THERETO (DOC.
#53); SUSTAINING IN PART AND OVERRULING IN PART
DEFENDANT CITY OF XENIA, OHIO'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS (DOC. #31)

---

This matter is currently before the Court on the parties' Objections, Docs.

##51 and 53, to United States Magistrate Judge Sharon L. Ovington's Report and

Recommendations, Doc. #49, recommending that the Court sustain in part and

overrule in part Defendant City of Xenia's Motion for Partial Judgment on the

Pleadings, Doc. #31. The parties also filed Responses to the Objections, Docs. ##55-57.


I. **Background and Procedural History**

The City of Xenia owns the land on which the Xenia Towne Square Shopping Center sits. The City leases the land to businesses, who have the right to construct commercial buildings on the property. Plaintiff, Blue Rock Investments, LLC, owns the now-vacant Fulmer's grocery store building located in the shopping center. The K-Mart building previously directly abutted the Fulmer's building.

According to the Complaint, the City decided to redevelop this area and convert the shopping center into an "urban, mixed-use plan," divided by new city streets. In 2015, as part of the proposed development, the City acquired the vacant K-Mart building, and solicited bids to demolish it. Beginning in October of 2016, pursuant to a contract with the City, Badger Construction began demolition of the K-Mart building. Demolition was completed in January of 2017.

The City was aware that, because the K-Mart building directly abutted the Fulmer's building, special care would have to be taken during the demolition not to also damage the Fulmer's building. Nevertheless, the City failed to provide Blue Rock with notice of when the demolition would take place and the Fulmer's building was, in fact, damaged during the demolition process. The building's footings were exposed, compromising the structural integrity of the west wall.

Flashing bolts were ripped out of the wall, leaving holes along the top of the wall. Another large hole in the middle of that wall left the interior of the building exposed to the elements. This caused water pipes to burst, resulting in further damage to the building.

After Blue Rock discovered the damage, it asked whether the City planned to fix the building. The City explained that it wanted to acquire Blue Rock's interest in the property so that it could demolish the building and extend one of the new city streets as part of the proposed redevelopment. Blue Rock maintains that, after the Fulmer's building suffered damage in conjunction with the K-Mart demolition, the City sought to acquire it at a distressed price.

According to Plaintiffs, when Blue Rock refused the City's offer, the City issued retaliatory code violations, citing Blue Rock for the physical damage that was caused by the City's own alleged wrongdoing. To no avail, Blue Rock appealed the Notice of Violation to the Board of Zoning Appeals. Blue Rock, at its own expense, repaired the damage to the Fulmer's building.

Plaintiffs, Blue Rock and Boymel Family, LLC, then filed suit, asserting five claims against the City of Xenia. Three claims are brought under 42 U.S.C. § 1983: (1) First Amendment retaliation (Count I); (2) Fourteenth Amendment substantive due process (Count II); and (3) Fourth Amendment unreasonable

seizure (Count III). Plaintiffs also asserted state law claims of Breach of Contract—Quiet Enjoyment (Count IV) and Negligence (Count V). Doc. #1.[1]

The City moved for partial judgment on the pleadings on Counts I, II, III and V, and on Plaintiffs' claim for punitive damages. Doc. #31. Subsequently, Plaintiffs voluntarily withdrew their request for punitive damages. Doc. #34, PageID#605. On December 10, 2018, United States Magistrate Judge Sharon L. Ovington issued a 24-page Report and Recommendations, Doc. #49, recommending that the Court sustain in part and overrule in part Defendant City of Xenia's Motion for Partial Judgment on the Pleadings, Doc. #31. She recommended that the Court dismiss Counts I, II and V of Plaintiff's Complaint.

More specifically, Magistrate Judge Ovington recommended that the Court dismiss Counts I and II because, although styled as First Amendment retaliation and substantive due process claims, these were essentially Fifth Amendment Takings Clause claims subject to the ripeness requirement of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). She also recommended that the Court dismiss Count V, the negligence claim, because the City of Xenia is statutorily immune from liability under Ohio Revised Code § 2744.02. She recommended that the Court overrule the City's motion to dismiss Count III, seeking relief under 42 U.S.C. § 1983 for an alleged Fourth Amendment violation.

---

[1]  The City then filed a Third-Party Complaint against Badger Construction Co. and Ohio Casualty Insurance Co. Doc. #11.

The City of Xenia and Plaintiffs each filed timely Objections to the Report and Recommendations, along with Responses. Docs. ##51, 53, 56, 57. Third-party Defendant, Badger Construction Co., Inc., also filed a Response, Doc. #55. The Court held oral argument on the Objections on February 14, 2018. Pursuant to Fed. R. Civ. P. 72(b), the Court must review *de novo* those portions of the Report and Recommendations to which proper Objections have been made.

The Court has recently sustained Plaintiffs' Motion for Leave to File Amended Complaint, Doc. #72, and allowed Plaintiffs to add a negligence claim against Badger Construction. That Amended Complaint will supersede the original Complaint, and would typically moot the City's Motion for Partial Judgment on the Pleadings. Nevertheless, because the five causes of action asserted against the City remain unchanged, because the City's Motion for Partial Judgment on the Pleadings is already fully briefed, and because the addition of the new negligence claim against Badger does not affect the issues raised therein, it would be a waste of time and resources to require the City to re-file its motion.

## II. Counts I and II (First Amendment Retaliation and Substantive Due Process Violation)

Count I of the Complaint seeks relief under 42 U.S.C. § 1983 for retaliation in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that they engaged in activity protected by the First Amendment by exercising their right to petition the City for grievances regarding

5

the damage caused to the Fulmer's building, and by refusing to accept the City's offer to purchase the building at a distressed price. The City then allegedly retaliated against Plaintiffs by issuing a notice of code violations for damage that the City itself caused. Count II of the Complaint seeks relief under 42 U.S.C. § 1983 for a violation of Plaintiffs' substantive due process rights. Plaintiffs allege that the City's conduct in refusing to repair the damage to the Fulmer's building, attempting to buy the building at a distressed price, and then issuing a notice of code violations constitutes an arbitrary and capricious misuse of the City's police powers.

In her Report and Recommendations, Magistrate Judge Ovington found that these two claims were, in reality, restyled Fifth Amendment Takings Clause claims subject to the mandate of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In *Williamson*, the Supreme Court held that a Takings Clause claim is not ripe until the plaintiff has sought just compensation through available state procedures. *Id.* at 194. Claims that are "ancillary" to a Takings Clause claim are also subject to the ripeness requirements of *Williamson*. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 571-72 (6th Cir. 2008).

Magistrate Judge Ovington acknowledged that Plaintiffs did not expressly assert a Takings Clause claim. She found, however, that Plaintiffs' factual allegations gave rise to a "prototypical Fifth-Amendment-takings scenario—a municipality taking private property for the public use as a redeveloped shopping

6

center." Doc. #49, PageID#735. She also interpreted Plaintiffs' prayer for compensatory damages to be one for "just compensation" under the Fifth Amendment.

Citing *Montgomery v. Carter County*, 226 F.3d 758, 769 (6th Cir. 2000), Magistrate Judge Ovington noted that the Sixth Circuit has held that the concept of substantive due process "may not be used in order to mount an end run around the ripeness requirement of *Williamson*." She acknowledged that the First Amendment retaliation claim and the substantive due process claim arose from the City's *post-demolition* conduct. She nevertheless concluded that these claims were not truly independent from the implied Takings Clause claim, but were ancillary to it.

Citing *Monfort Supply Co. v. Hamilton County Board of Zoning Appeals*, 1:04cv145, 2006 WL 3692533, at *8 (S.D. Ohio 2006), Magistrate Judge Ovington found that Counts I and II arose from the same nucleus of operative facts as the implied Takings Clause claim. She further reasoned that, *but for* the damage resulting from the allegedly-negligent demolition, Plaintiffs would not have engaged in protected activity and the City would not have had the opportunity to retaliate. Nor would the City have had the opportunity to misuse its enforcement power by issuing a notice of code violations to Plaintiffs

Magistrate Judge Ovington concluded that Counts I and II were ancillary to a repackaged Fifth Amendment Takings Clause claim, and were subject to the ripeness requirement of *Williamson*. She determined that Plaintiffs had attempted

to mount an end run around *Williamson*'s ripeness requirement. Because Plaintiffs must first seek relief through Ohio's mandamus proceedings, she recommended dismissing Counts I and II on ripeness grounds.

Plaintiffs have filed Objections to this portion of the Report and Recommendations. They deny that Counts I and II are actually disguised Fifth Amendment Takings Clause claims subject to *Williamson*'s ripeness requirement. For the reasons set forth below, the Court agrees and sustains Plaintiffs' Objections on this point.

Plaintiffs first argue that Magistrate Judge Ovington's reliance on *Monfort* is misplaced. In *Monfort*, the plaintiffs *expressly asserted* a Fifth Amendment Takings Clause claim, along with claims of due process and equal protection violations, all arising from the county zoning inspector's denial of a non-conforming use or hardship variance. At issue was whether the due process and equal protection claims were "truly independent" or whether they were ancillary to the regulatory taking claim and therefore subject to *Williamson*.

In determining whether these claims were ancillary, the court considered "whether the claims stem from an immediate and concrete injury, arise from the same nucleus of facts as the takings claim, or are an attempt to circumvent the ripeness requirement." *Monfort*, 2006 WL 3692533, at *8. The court concluded that the due process and equal protection claims were ancillary to the takings claim. Not only did they arise out of the same nucleus of facts as the takings

claim, but Plaintiffs had alleged no "independent harm which flows directly from the denial of due process." *Id.* at *9.

Plaintiffs note that, in each of the other cases on which Magistrate Judge Ovington relies, the plaintiffs had likewise *expressly asserted* a Takings Clause claim. *Choate's Air Conditioning & Heating, Inc. v. Light, Gas & Water Division of Memphis*, 16 F. App'x 323 (6th Cir. 2011), involved an easement agreement between Choate's and the City. Plaintiff alleged that the City's conduct, in leasing a portion of the easement to telecommunication companies for the installation of cell phone antennas on Choate's water tower, constituted a taking within the meaning of the Fifth Amendment. *Id.* at 325. Plaintiff also alleged a substantive due process violation, which the court found to be a "repackaged" takings claim subject to the ripeness requirement of *Williamson*. *Id.* at 330-31. Likewise, in *Buckles v. Columbus Municipal Airport Authority*, 90 F. App'x 927 (6th Cir. 2004), the plaintiff had asserted both an unripe Takings Clause claim and a substantive due process claim, which the court determined was subsumed by the Takings Clause claim. *Id.* at 931.

In contrast to each of these cases, Plaintiffs have not expressly alleged a Takings Clause claim. In fact, as yet, there has been no physical or regulatory "taking" of the vacant Fulmer's building. Plaintiffs still own the building, remain in possession of it, and presumably maintain the right to lease it to a suitable tenant through July of 2024 when the lease with the City expires. The City may have

plans to eventually acquire and demolish the building as part of the redevelopment project but, as yet, the City has not begun any eminent domain proceedings.

Moreover, Plaintiffs' First Amendment retaliation and substantive due process claims do not arise from the same nucleus of facts as the allegedly-implied Takings Clause claim. Plaintiffs' claims arise not from the physical damage to the Fulmer's building, but from the City's subsequent conduct, giving rise to "separate and distinct harms caused by the City's retaliatory abuse of power." Doc. #53, PageID#778. The Court agrees with Plaintiffs that the "but-for" test on which Magistrate Judge Ovington bases her recommendation is unprecedented and contrary to law. It may be true that Plaintiffs' constitutional claims would not have arisen "but for" the fact that the Fulmer's building was damaged during the demolition of the K-Mart building. However, that does not necessarily make them "ancillary" to an unpled Takings Clause claim. Nor does it make them subject to the ripeness requirement of *Williamson.*

The case of *Robert Weiler Co. v. Kingston Township*, 2:07-cv-760, 2009 WL 890538 (S.D. Ohio March 30, 2009), is instructive. A property developer voluntarily withdrew his rezoning application after the township denied it. The Zoning Commission then enacted a moratorium during which it refused to accept his two revised applications. The Commission subsequently revised the zoning regulations to eliminate the flexible density limits that would have allowed for his proposed development. Weiler filed suit alleging procedural and substantive due process violations, equal protection violations, and First Amendment retaliation.

10

Defendants argued that Weiler's claims amounted to a Fifth Amendment Takings Clause claim, subject to *Williamson*'s ripeness requirement. The court disagreed. It noted that Weiler had not alleged a physical or regulatory taking of the property. His claims stemmed solely from Defendants' enactment of the moratorium, their failure to accept his rezoning applications and their allegedly retaliatory conduct in violation of his First Amendment rights. *Id.* at *4. The court held that these claims were not subject to the exhaustion and finality requirements of *Williamson*. *Id.* at *6.

*Wedgewood Limited Partnership I v. Township of Liberty,* 456 F. Supp. 2d 904 (S.D. Ohio 2006), is also instructive. There, the developer wanted to build a Wal-Mart Supercenter, but the township denied the applications for a zoning variance. The township then enacted more restrictive zoning regulations. The developer submitted a new permit application, which the Zoning Inspector denied. The Board of Zoning Appeals denied the developer's appeal.

The developer filed suit seeking relief under § 1983, alleging violations of procedural and substantive due process rights. The court rejected defendant's argument that these claims were subject to *Williamson*'s ripeness requirement, noting that "Plaintiff has not alleged a Fifth Amendment taking, regulatory or otherwise." *Id.* at 920. Rather, plaintiff alleged that Defendants violated its due process rights by "arbitrarily, capriciously, and willfully ignoring Plaintiff's compliance with Defendants' legitimate zoning standards." *Id.* at 921. The court

concluded that these were "pure due process claims," instantly cognizable and not subject to *Williamson*. *Id.*

Likewise, in *Center for Powell Crossing, LLC v. City of Powell*, 173 F. Supp. 3d 639 (S.D. Ohio 2016), the district court rejected the City's argument that plaintiffs' due process claims were subject to the ripeness requirement of *Williamson*. The court noted that the plaintiffs had not asserted a takings claim. *Id.* at 654. Moreover, the "thrust" of the due process claims was not that the challenged action constituted a taking, but rather that there were "infirmities" in the process and that plaintiffs were singled out for "arbitrary and unfair treatment." *Id.* at 655-56.

The City notes that, in *White Oak Property Development, LLC v. Washington Township,* 1:07cv595, 2009 WL 961175 (S.D. Ohio Apr. 7, 2009), the court found that, even though the plaintiff did not expressly assert a Takings Clause claim, the procedural due process claim was ancillary "to any taking claim that White Oak may have." *Id.* at *17. Citing *J-II Enterprises, LLC v. Board of Commissioners of Warren County*, 135 F. App'x 804 (6th Cir. 2005), the court noted that a Takings Clause claim may be implied. *White Oak*, 2009 WL 961175, at **16-17. In *J-II*, however, although the plaintiffs did not expressly assert a Fifth Amendment Takings Clause claim, they did specifically allege that "[t]he Board has destroyed Plaintiffs' value of the [] Property to such an extent that the Board's action constitutes a taking of Plaintiffs' property. Plaintiffs are entitled to just compensation in the amount of the diminution in the value of the [] Property as

12

a result of the Board's actions." *J-II*, 135 F. App'x at 806. The court held that, regardless of the label plaintiffs had attached to their claims, the injury of which they complained and the relief they sought both implicated the Takings Clause of the Fifth Amendment. *Id.*

Plaintiffs here have not asserted a Fifth Amendment Takings Clause claim. Nor is such a claim implicit in the factual allegations of the Complaint. Rather, the "thrust" of their First Amendment retaliation claim is that, after they engaged in protected First Amendment activity by complaining about the damage to the building and refusing to accept the City's offer to buy the property, the City retaliated against them by issuing the Notice of Violation. Likewise, the "thrust" of their substantive due process claim is that the City's conduct, in attempting to buy the damaged Fulmer's building at a distressed price and in issuing the Notice of Violation, was coercive, arbitrary and capricious, and constituted a misuse of the City's enforcement powers.

Moreover, although the Complaint generally seeks compensatory damages, Plaintiffs do not seek "just compensation" for any diminution in value to the property as a result of the physical damage. Rather, they seek damages for the deprivation of their First Amendment rights and substantive due process rights. Should Plaintiffs succeed on these claims, they would be entitled to damages completely unrelated to any alleged "taking" of property. In addition, Plaintiffs seek injunctive relief that "normally would be available only under a substantive due process theory." *Braun*, 519 F.3d at 574.

For these reasons, the Court concludes that Counts I and II are not disguised
Takings Clause claims. Nor are they "ancillary" to an unpled Takings Clause claim.
Plaintiffs allege independent harms flowing directly from the City's post-demolition
conduct. As such, these claims are not subject to *Williamson*'s ripeness
requirement. Plaintiffs have adequately pled all required elements of a First
Amendment retaliation claim and a substantive due process claim.[2] The alleged
injury is complete and these claims became ripe when the Board of Zoning Appeals
denied Plaintiffs' appeal with reference to the City's Notice of Violation.

---

[2] In its Response to the Objections filed by the City and by Plaintiffs, Doc. #55,
Third-party Defendant, Badger Construction, argues that because Plaintiffs do not
allege "physical abuse" or conduct that "shocks the conscience," Count II fails to
state a plausible substantive due process claim. A substantive due process claim
will not lie "[w]here a particular Amendment 'provides an explicit textual source of
constitutional protection' against a particular sort of government behavior."
*Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (quoting *Albright v.
Oliver*, 510 U.S. 266, 273 (1994)). Badger, however, does not allege that another
source of constitutional protection exists.

Badger argues only that Plaintiffs have not adequately alleged conduct that
"shocks the conscience." The Court disagrees. Assuming that the plaintiff has a
constitutionally-protected property or liberty interest, a substantive due process
claim can be based on arbitrary and capricious action by the political subdivision.
*See, e.g., Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir. 2015)
("Substantive due process, among other things, protects citizens from being
subject to 'arbitrary or irrational zoning decisions.'"). As the Sixth Circuit has
noted, government action "violates substantive due process . . . if it can be
characterized as "arbitrary, or conscience shocking, in a constitutional sense."
*Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012) (quoting *Cty.
of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). In characterizing the City's
conduct in issuing the Notice of Violation to Blue Rock as "coercive" and "a misuse
of the City's enforcement powers," Doc. #1, PageID#18, Plaintiffs have
adequately alleged a deprivation of their property and liberty interest without due
process of law.

Accordingly, with respect to Counts I and II, the Court sustains Plaintiffs'
Objections and rejects the Report and Recommendations. As to Counts I and II,
the Court overrules the City's Motion for Judgment on the Pleadings.[3]

## III.  Count III

In Count III of the Complaint, Plaintiffs allege that the City's conduct violates
the Fourth Amendment's guarantee to be free from unreasonable seizures of
property.  Plaintiffs allege that they had a reasonable expectation of privacy in the
Fulmer's building and a meaningful possessory interest in it, and that the City's
conduct in damaging the building and refusing to make repairs constitutes an
unlawful seizure.

In her Report and Recommendations, Magistrate Judge Ovington found that,
drawing all reasonable inferences in Plaintiffs' favor, the Complaint states a

---

[3] In its Response to the Objections to the Report and Recommendations, Doc.
#55, Third-party Defendant, Badger Construction, argues that Counts I, II, and III
should be dismissed because Plaintiffs have failed to allege that Ohio's post-
deprivation procedures are inadequate to remedy the alleged constitutional
deprivations.  In *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*,
468 U.S. 517 (1984), the court held that "a deprivation of a constitutionally
protected property interest caused by a state employee's random, unauthorized
conduct does not give rise to a § 1983 procedural due process claim, unless the
State fails to provide an adequate postdeprivation remedy."  *Zinermon v. Burch*,
494 U.S. 113, 115 (1990).  These cases, however, apply only to procedural due
process claims.  *Wagner v. Higgins*, 754 F.2d 186, 193 (6th Cir. 1985) (Contie,
J., concurring) ("It is now clear that *Parratt* applies only to procedural due process
claims and not to claims involving a violation of a substantive constitutional
right.").  Given that Counts I, II and III allege violations of substantive
constitutional rights, *Parratt* is inapplicable, and Plaintiffs need not allege that post-
deprivation procedures are inadequate.

15

plausible § 1983 Fourth Amendment claim against the City. As to Count III, she therefore recommended that the Court overrule the City's Motion for Judgment on the Pleadings.

Magistrate Judge Ovington rejected the City's argument that, because Plaintiffs alleged that the City and/or its agents "failed to perform the demolition in a workmanlike manner," and because Plaintiffs were not a party to the contract between the City and Badger Construction, the alleged injury was not fairly traceable to the challenged action, and that Plaintiffs therefore lacked standing to litigate this claim. She found that the City had improperly focused on this one allegation in the Complaint, ignoring additional allegations involving the City's pre- and post-demolition conduct.

Likewise, Magistrate Judge Ovington rejected the City's argument that Plaintiffs' allegations concerning the City's failure to perform the demolition in a workmanlike manner suggest nothing more than negligence, short of the "knowing" or "intentional" conduct needed to support a § 1983 claim. She noted that Plaintiffs had alleged that the City was well aware of the risk that demolishing the K-Mart building would also cause damage to the Fulmer's building. Yet the City failed to provide Blue Rock with adequate notice either before or after the demolition. Not only was the Fulmer's building damaged, but the City refused to make repairs. Magistrate Judge Ovington concluded that, drawing all reasonable inferences in Plaintiffs' favor, it could be reasonably inferred from the facts alleged that the City intentionally and meaningfully interfered with Plaintiffs' possessory

16

interest in the building and that the City's action was the moving force behind the alleged Fourth Amendment injury. Doc. #49, PageID##740-45.

The City has filed numerous Objections to this portion of the Report and Recommendations. Doc. #51. It first argues that the factual allegations on which Magistrate Judge Ovington based her recommendation —the City's pre- and post-demolition conduct—do not appear in Count III of the Complaint. Rather, Count III appears to focus solely on the deprivation of Plaintiffs' possessory interest in the property caused by the allegedly negligent demolition and the City's refusal to repair the damage. The City acknowledges that the first paragraph of Count III incorporates all of the foregoing paragraphs of the Complaint. It argues, however, that this leaves the City to speculate as to exactly which prior allegations support the Fourth Amendment claim.

The Court overrules this Objection. In determining whether Plaintiffs had stated a plausible claim in Count III, Magistrate Judge Ovington did not err in considering the prior factual allegations in the Complaint, which were expressly incorporated therein. *See, e.g., Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 796 (6th Cir. 2012) (holding that, although a claim's allegations appeared to be conclusory, the pleading had expressly incorporated all prior factual allegations which, accepted as true, were sufficient to state a plausible claim).

In the alternative, the City argues that because the same factual allegations support Counts I, II and III, all three Counts should be deemed repackaged Fifth Amendment Takings Clause claims. As with Counts I and II, the City argues that

17

Count III should be dismissed on ripeness grounds under *Williamson.* As Plaintiffs note, however, *Williamson*'s ripeness requirement does not apply to Fourth Amendment claims. *Brown v. Metro. Gov't of Nashville & Davidson Cty.*, No. 11-5339, 2012 WL 2861593, at *4 (6th Cir. Jan. 9, 2012). For this reason, the Court overrules the City's Objection on this alternative ground.

Citing *Golf Village North LLC v. City of Powell*, 333 F. Supp. 3d 769 (S.D. Ohio 2018), the City next argues that the Fourth Amendment should not be stretched to protect vacant commercial property. In *Golf Village North*, the court held that undeveloped private property that plaintiffs wanted to use for future commercial development was essentially an "open field" that was not protected by the Fourth Amendment. *Id.* at 776. The Fulmer's building, however, is clearly distinguishable from an "open field." As Plaintiffs note, commercial structures fall within the protection of the Fourth Amendment. *See Dow Chem. Co. v. U.S.*, 476 U.S. 227, 235 (1986) ("Plainly a business establishment or an industrial or commercial facility enjoys certain protections under the Fourth Amendment."). The fact that the Fulmer's building is currently vacant may diminish the degree of privacy protection to which Plaintiffs are entitled, but it does not eliminate it. *Freeman v. City of Dallas*, 242 F.3d 642, 653 (5th Cir. 2001) ("As vacant commercial properties, the structures were not subject to the same degree of privacy protection as non-business property."). Accordingly, the Court overrules the City's Objection on this ground.

The City next argues that Magistrate Judge Ovington erred in concluding that Plaintiffs have standing to assert a Fourth Amendment claim. The City essentially rehashes the arguments it made in its motion, again focusing on the allegation that the City or its agents failed to perform the demolition in a workmanlike manner. Because Magistrate Judge Ovington properly rejected these arguments, the Court overrules the City's Objection. She correctly noted that the City had overlooked Plaintiffs' allegations about the City's pre- and post-demolition conduct, and had failed to draw all reasonable inferences in Plaintiffs' favor. The facts alleged raise a reasonable inference that the City interfered with Plaintiffs' possessory interest in the Fulmer's building.

The City also argues that Magistrate Judge Ovington erred in concluding that Plaintiffs' factual allegations give rise to a plausible Fourth Amendment violation. According to the City, the allegations in Count III amount to nothing more than a claim of negligent demolition. At oral argument, counsel for the City argued that Plaintiffs are essentially seeking to constitutionalize a negligence claim.[4]

---

[4] To the extent that the alleged failure to perform in a workmanlike manner arises from the Xenia-Badger contract, the City further argues that Magistrate Judge Ovington erred in constitutionalizing Ohio contract law. As Plaintiffs note, however, Count III is not grounded in contract law. Rather, Plaintiffs have argued that the City's refusal to make repairs to the building interfered with Plaintiffs' right to use the building, and constitutes a "seizure" within the meaning of the Fourth Amendment. The Court therefore overrules this Objection.

The Court sustains the City's Objection on this point, albeit on slightly different grounds. In order to state a plausible Fourth Amendment claim, Plaintiffs must allege that: "(1) a governmental defendant's actions constituted a search or seizure within the meaning of this Amendment; and (2) their actions were unreasonable in light of the surrounding circumstances." *Allen v. Leis*, 154 F. Supp. 2d 1240, 1272 (S.D. Ohio 2001). The Fourth Amendment "protects property interests as well as expectations of privacy." *Id.* (citing *Soldal v. Cook Cty.*, 506 U.S. 56, 62 (1992), and *United States v. Jacobsen*, 466 U.S. 109, 120 (1984)).

A "seizure" of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *Jacobsen*, 466 U.S. at 113. Plaintiffs have alleged that Blue Rock has a reasonable expectation of privacy in the Fulmer's building, and that the City's actions in damaging the building and refusing to repair it have meaningfully interfered with Blue Rock's possessory interest in the property. Nevertheless, the Court finds that Plaintiffs have failed to support these claims with facts showing that there has been a seizure "within the meaning of [the Fourth] Amendment." *Allen*, 154 F. Supp. 2d at 1272.

The goal of the Fourth Amendment is "to curb arbitrary exercises of police power." *United States v. Jones*, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring). *See also United States v. Thompson*, 667 F. Supp. 2d 758, 762 (S.D. Ohio 2009) ("The Fourth Amendment is a curb on the police power on the state."); *United States v. Certain Real Property, Commonly Known as 6250 Ledge*

*Road, Egg Harbor, Wisconsin*, 747 F. Supp. 505, 513 (E.D. Wis. 1990) ("It is axiomatic that the fourth amendment serves to protect the citizen from arbitrary and unreasonable exercises of police power.").

Plaintiffs cite to *Bonds v. Cox*, 20 F.3d 697 (6th Cir. 1994) for the proposition that the City's damage to Plaintiffs' property constitutes a *per se* Fourth Amendment violation. *Bonds*, however, is factually distinguishable. In *Bonds*, the court held that physical damage to the plaintiff's house, *caused while the police were executing a search warrant*, "clearly rises to the level of a 'meaningful interference' with her possessory interests" and constitutes a seizure under the Fourth Amendment. *Id.* at 702.

In contrast, the property damage to the Fulmer's building did not occur while the City was exercising any of its police powers. Rather, it occurred while the City was demolishing an abutting building that was owned by the City itself. In the Court's view, although this factual scenario may give rise to certain tort claims, it does not constitute a "seizure" within the meaning of the Fourth Amendment. The Fourth Amendment is not implicated every time the government damages a citizen's property.[5] Accordingly, the Court finds that Plaintiffs have failed to state a plausible Fourth Amendment violation.

_____

[5]  Moreover, despite the physical damage to the building, it cannot necessarily be said that the City interfered with Blue Rock's "possessory interest" in the property, given that the City at no time exercised "dominion and control" over the building itself. *See Jacobsen*, 466 U.S. at 120.

For these reasons, with respect to Count III, the Court rejects the Report and Recommendations, sustains in part and overrules in part the City's Objections thereto, and dismisses Count III with prejudice.

## IV. Count V

In Count V, Plaintiffs allege that the City owed Plaintiffs a duty to exercise due care in the demolition of the K-Mart building, and that the City breached that duty by failing to give Plaintiffs proper notice before and after the demolition, and by failing to exercise reasonable care in contracting, managing and performing the demolition. As a result of the City's alleged negligence, Plaintiffs suffered property damage.

Under Ohio Revised Code § 2744.02(A)(1), a political subdivision is generally immune from liability for damages in a civil action for property loss caused by acts or omissions of the political subdivision or its employees "in connection with a governmental or proprietary function." Section 2744.02(B) sets forth certain exceptions to this general grant of immunity. For example, political subdivisions *are* liable for damages for property loss "caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Ohio Revised Code § 2744.02(B)(2).

In their Complaint, Plaintiffs allege that because the City, at all relevant times, was performing a proprietary function in its capacity as Plaintiffs' landlord, the City is not immune from liability for its own negligence. The City argues that

22

§ 2744.02(B)(2) does not apply because the alleged property loss was caused by Badger's negligence, and Badger is an independent contractor, not an employee of the City. Magistrate Judge Ovington noted that Plaintiffs had not specifically responded to this argument.

In *Weldon v. Prairie Township*, 2010-Ohio-5562, ¶ 13, 2010 WL 4632553, at *4 (Ohio App. 2010), the court held that statutory immunity is limited to those instances "where there is no evidence that the political subdivision exercised control over the independent contractor." Citing *Weldon*, Magistrate Judge Ovington concluded that the City was statutorily immune from liability because there was no evidence that the City had exercised control over Badger's acts. In addition, citing *Trotwood v. South Central Construction, LLC*, 192 Ohio App. 3d 69, 83 (2011), she rejected Plaintiffs' argument that, because demolition is an inherently dangerous activity, the City had a nondelegable duty that would defeat any claim of statutory immunity. Because she concluded that the City is statutorily immune from liability, she recommended that the Court dismiss Count V.[6]

Plaintiffs object to this recommendation. They first argue that, because the demolition contract gives the City the right to exercise control over Badger's demolition activities, the City is not immune from liability for Badger's acts. Given

---

[6]   As the parties have noted, the conclusion of the Report and Recommendations mistakenly states that Count V, along with Counts I and II, should be dismissed because it is not ripe. This is clearly a typographical error.

that Plaintiffs failed to raise this argument before the Magistrate Judge, it cannot now be considered. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) ("[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived.") (internal quotation omitted). Accordingly, the Court overrules Plaintiffs' first Objection.

The Court, however, sustains Plaintiffs' other Objection on Count V. They note that Magistrate Judge Ovington appeared to acknowledge that, if the City were performing a proprietary function, and if the property damage were caused not by Badger's negligence, but by City's *own* negligence in contracting with Badger and in managing the demolition project, § 2744.02(B)(2) might strip the City of statutory immunity. Doc. #49, PageID##747-48. Nevertheless, Magistrate Judge Ovington failed to consider whether the City would be liable for property damage "caused by the negligent performance of acts by [its] employees with respect to proprietary functions."

Even if Magistrate Judge Ovington had found that the City could be liable for the acts of its own employees, this is not the end of the inquiry. The immunity exception contained in § 2744.02 applies only to "proprietary" functions. If, as the City has argued, the City were instead performing a "governmental" function when it contracted with Badger and managed the demolition project, it would be immune from liability under Ohio Revised Code § 2744.02(A)(1). True, the Complaint alleges that, at all relevant times, the City was engaged in a "proprietary" function as Blue Rock's landlord. However, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The City and Badger Construction both argue that, in hiring Badger to demolish the K-Mart building and in managing that demolition project, the City was involved in a governmental function, not a proprietary function. The Court agrees. A "governmental function" is specifically defined to include "[u]rban renewal projects." Ohio Revised Code § 2744.01(C)(2)(q). "Immunity for actions taken in conjunction with an urban renewal project provides municipalities with protection from civil liability." *Frazier v. Kent*, 2007-Ohio-5782, at ¶57, 2007 WL 3133776, at *7 (Ohio Ct. App. Oct. 26, 2007). Here, Plaintiffs specifically allege that the City acquired the K-Mart building and demolished it in connection with the City's redevelopment project.

Moreover, the City itself owned the K-Mart building and the land upon which it sat. Plaintiffs allege that the City owed Blue Rock a duty to exercise reasonable care in demolishing the K-Mart building. That duty, however, would be owed to the owner of any abutting building on adjacent land; it is not dependent on the existence of the lease agreement between the City and Blue Rock. In addition, as the City also notes, that lease agreement is completely silent on the topic of the City's demolition of neighboring structures.

Based on the factual allegations in the Complaint, the Court finds that, in hiring Badger to demolish the K-Mart building and in managing that demolition project, the City was not engaged in a proprietary function, but in a governmental

function. Therefore, the City is entitled to statutory immunity on this alternate basis.

To summarize, with respect to Magistrate Judge Ovington's recommendation to dismiss Count V of the Complaint on grounds of statutory immunity, the Court sustains in part and overrules in part Plaintiffs' Objections. The Court adopts the Report and Recommendations, albeit on alternate grounds, and dismisses Count V of the Complaint with prejudice.

## V. Conclusion

For the reasons set forth above, the Court:

- ADOPTS IN PART and REJECTS IN PART Magistrate Judge Ovington's Report and Recommendations, Doc. #49;

- SUSTAINS IN PART and OVERRULES IN PART the City of Xenia's Objections thereto, Doc. #51;

- SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' Objections thereto, Doc. #53; and

- SUSTAINS IN PART and OVERRULES IN PART Defendant City of Xenia's Motion for Partial Judgment on the Pleadings, Doc. #31.

Counts III and V of the Complaint are DISMISSED WITH PREJUDICE. Counts I, II and IV remain pending.

Date: March 20, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE